KESSLER, P.J.
¶1 Martez C. Fennell appeals a judgment of conviction, following a jury trial, of one count of armed robbery as a party to a crime and one count of operating a vehicle without the owner's consent as a party to a crime. Fennell also appeals from the orders denying his postconviction motion for relief and his motion for reconsideration. We affirm.
BACKGROUND
¶2 On August 20, 2014, Fennell was charged with one count of armed robbery, as a party to a crime, and one count of operating a vehicle without the owner's consent, as a party to a crime. According to the criminal complaint, on June 22, 2014, Milwaukee police were dispatched to the city's north side to investigate an armed robbery and carjacking. The victim, A.R., told police that she was parking her car when a Dodge Magnum pulled up behind her and two men exited the vehicle and walked towards her car. A.R. tried to back her car up, but one of the men was already at her driver's side window, armed with a handgun. He instructed A.R. to exit her vehicle and to leave everything inside the car. A.R. then noticed the other man near the passenger side door. A.R. exited the car, leaving behind her purse. As she exited the car, the armed robber took her cell phone from her hand. A.R. ran away and hid.
¶3 The complaint further states that A.R. later called her phone and heard a male voice on the other end. A.R. asked the man why he was answering a stolen phone. He responded, "Yeah, what are you going to do about it?" and hung up. A.R.'s mother also called A.R.'s phone. A male answered. A.R.'s mother asked where the car was and he responded, "It's with me, Bitch."
¶4 Four days later, police investigated a large amount of stolen property located at the home of Fennell's grandmother. Several items belonging to A.R. were found.
¶5 An incident report written by Milwaukee Police Officer Paloma Winkelmann, one of the officers dispatched to the crime scene, states that A.R. did not see the armed robber's face because she "was scared of the gun." The report further states that A.R. described the robber as a black male with a light complexion, weighing approximately 120 pounds and wearing a red t-shirt. On August 15, 2014, A.R. positively identified Fennell in a photo array.
¶6 The matter proceeded to trial where A.R. and Fennell both testified. A.R. described the gun-wielding robber's physical features, consistent with the description in the criminal complaint, and also identified Fennell in court. The following exchange ensued:
[State]: Okay. When you talked to the officers [immediately after the robbery] ... you gave them a description of this gunman, right?
[A.R.]: Correct.
[State]: Okay. In giving that description, did you say whether or not you could see his face?
[A.R.]: I believe I did, yes.
[State]: And do you believe you told [officers] that you could see his face or that you could not see his face?
[A.R.]: I told him I could see the ... first one on the driver side but not the one on the passenger side.
....
[State]: This guy that's on your driver's side with a gun, did you get a good look at his face?
[A.R.]: Yes.
¶7 On cross-examination, defense counsel asked A.R. about her initial statement to Winkelmann:
[Defense Counsel]: [D]o you recall that when the police did come about an hour after the incident one of them was an Officer Jeffrey Emmanuelson, another one was an Officer Monigold, and then there was another one named Winkelmann?
[A.R.]: I don't recall names. I just know there was about three or four officers that showed up to the scene.
[Defense Counsel]: And they talked to you, right?
[A.R.]: That would be correct.
....
[Defense Counsel]: Do you recall telling those officers this: ... "that [you] did not see his face because [you] [were] scared of the gun." Is that correct?
[A.R.]: No.
[Defense Counsel]: You think the officers took it down wrong?
[A.R.]: Yes, they did.
[Defense Counsel]: Well, that gun was right in your face, right?
[A.R.]: Right, but I still could see the person's face also.
[Defense Counsel]: So you deny saying to the police what I just quoted about you saying that could not see his face because you were scared about the gun. You want to take that back?
[A.R.]: Yes, I deny that.
(Some formatting altered.)
¶8 On the last day of trial, defense counsel attempted to subpoena Winkelmann, but Winkelmann was not properly served. Defense counsel explained that he did not subpoena Winkelmann earlier because he mistakenly believed that the State planned to subpoena Winkelmann. Winkelmann did not testify, nor was his report introduced into evidence.
¶9 Fennell testified, telling the jury that he did not carjack A.R. and that her personal items were found at his grandmother's house because other family members with access to the house engaged in criminal activities.
¶10 The jury found Fennell guilty of both charges. Fennell was sentenced to nine years of initial confinement and six years of extended supervision on the armed robbery count, and to a concurrent term of three years of initial confinement and three years of extended supervision on the operating a vehicle without consent charge.
¶11 Fennell filed a postconviction motion for a new trial arguing that: (1) defense counsel was ineffective for failing to subpoena Winkelmann, who Fennell argued could have impeached A.R.'s credibility; (2) the charges against him were multiplicitous and violated constitutional double jeopardy provisions; (3) the jury instructions given on the State's burden of proof misstated the law; (4) the sentencing court erroneously exercised its discretion when it sentenced Fennell based on inaccurate information; and (5) the interest of justice required a new trial.
¶12 The postconviction court denied the motion without a hearing. This appeal follows. Additional facts will be included as relevant to the discussion.
DISCUSSION
¶13 On appeal, Fennell argues that: (1) the postconviction court erroneously denied his postconviction motion without an evidentiary hearing because counsel rendered ineffective assistance; (2) his convictions are multiplicitous; (3) his convictions are based on WIS JI-CRIMINAL 140, which "impermissibly reduce[s] the State's burden of proof, confuse[s] the jury, and otherwise violate[s] due process"; (4) the sentencing court erroneously exercised its discretion; and (5) a new trial is warranted in the interest of justice. (Capitalization omitted.) We address each argument in turn.
I. Ineffective Assistance of Counsel
¶14 A defendant claiming ineffective assistance of counsel must show both that his lawyer performed deficiently and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). To establish deficient performance, "a defendant must show specific acts or omissions of counsel that were 'outside the wide range of professionally competent assistance.' " State v. Nielsen , 2001 WI App 192, ¶12, 247 Wis. 2d 466, 634 N.W.2d 325 (citation omitted). To demonstrate prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland , 466 U.S. at 694.
¶15 A defendant who has made factual allegations with sufficient specificity which, if true, would establish both prongs of the Strickland test is entitled to the opportunity to make the necessary record in an evidentiary hearing. See State v. Bentley , 201 Wis. 2d 303, 313-18, 548 N.W.2d 50 (1996).
¶16 Fennell argues that defense counsel was ineffective "in not securing (via [a] properly served subpoena) and not presenting the credibility[ ]impeaching testimony of Officer Winkelmann" because Winkelmann "took A.R.'s statement minutes after the car[ ]jacking, in which A.R. denied having seen the face of the armed robber who took her car, and memorialized that statement in her [r]eport." Because the theory of defense was that Fennell was not the robber, Fennell argues, his case hinged upon A.R.'s credibility and the reliability of her identification.
¶17 Assuming, without deciding, that counsel's failure to secure Winkelmann as a witness was deficient, we agree with the postconviction court that the deficiency did not prejudice Fennell because the jury still heard A.R.'s statements to Winkelmann. During cross-examination, defense counsel read A.R. a specific statement from Winkelmann's report which said, "[A.R.] stated she did not see his face because she was scared of the gun." A.R. denied making the statement. When counsel pressed on, A.R. continued to deny her statement to Winkelmann. The jury had an opportunity to assess A.R.'s credibility.
¶18 Even if Winkelmann had testified, the jury still would have heard that A.R. identified Fennell in a photo array and that some of A.R.'s personal items were found in Fennell's grandmother's home. There is not a reasonable probability that adding Winkelmann's testimony would have resulted in a different outcome at trial. The postconviction court did not erroneously deny Fennell's motion without a hearing.
II. Multiplicitous Charges
¶19 Fennell next argues that the charges against him were multiplicitous, thus violating constitutional double jeopardy provisions.
¶20 "The double jeopardy provisions of the Wisconsin and United States Constitutions prohibit multiplicitous charges. Multiplicity occurs when the State charges more than one count for a single criminal offense." State v. Lock , 2013 WI App 80, ¶32, 348 Wis. 2d 334, 351, 833 N.W.2d 189 (internal citations omitted). "Whether an individual's constitutional right to be free from double jeopardy has been infringed is a question of law that we review de novo ." Id.
¶21 "We review multiplicity claims according to a well-established two-pronged methodology. First, the court determines whether the offenses are identical in law and fact using the 'elements-only' test" set forth in Blockburger v. United States , 284 U.S. 299 (1932). See State v. Ziegler , 2012 WI 73, ¶60, 342 Wis. 2d 256, 816 N.W.2d 238. "Under the 'elements-only' test, two offenses are identical in law if one offense does not require proof of any fact in addition to those which must be proved for the other offense." Id. "Still, offenses identical in law are not necessarily identical in fact." Id. "Two offenses, which are legally identical, are not identical in fact if the acts allegedly committed are sufficiently different in fact to demonstrate that separate crimes have been committed." Id.
¶22 Determining whether the two crimes are identical in fact "involves a determination of whether the charged acts are 'separated in time or are of a significantly different nature.' " State v. Koller , 2001 WI App 253, ¶31, 248 Wis. 2d 259, 635 N.W.2d 838 (citation omitted). "If the offenses are different in law or fact, the presumption is that the legislature intended to permit cumulative punishments." Ziegler , 342 Wis. 2d 256, ¶62. Here, the offenses are not identical in law or in fact.
¶23 The elements of armed robbery are that the defendant took property from the owner, had an intent to steal, threatened imminent use of force to compel acquiescence in the taking or carrying away ("asportation") of the property, and was armed with a dangerous weapon while committing the robbery. WIS. STAT. §§ 943.32(1)(b) & (2) (2017-18);[1] State v. Grady , 93 Wis. 2d 1, 5, 286 N.W.2d 607 (Ct. App. 1979). The elements of taking and driving a vehicle without the owner's consent are: that the defendant intentionally took a vehicle without the owner's consent and intentionally drove that vehicle without the owner's consent. See WIS. STAT. § 943.23(2). The crimes require separate facts to be proven-as the State succinctly stated:
Obviously, one need not take and drive a "vehicle" to commit an armed robbery. The "property" taken in a robbery could be a vehicle, but it could also be anything else possessed by the victim. One can take and drive a vehicle without acting forcibly by threatening the imminent use of force against the owner. One can take and drive a vehicle without using a dangerous weapon. One can take and drive a vehicle without intending to permanently deprive the owner of its possession. These two crimes are, obviously, not the same in law.
¶24 The crimes are also not identical in fact. Here, Fennell not only took and drove A.R.'s vehicle without her consent, but he did so at gunpoint and stole other personal items, including her phone and her purse. Fennell took A.R.'s phone from her hand while brandishing a gun, instructed her to leave all of her belongings in the car, and later indicated that he would not return the items. Fennell's actions meet the elements of armed robbery and are separate and distinct from his actions of taking A.R.'s car and driving away. Thus, the charges against Fennell were not multiplicitous.
III. Jury Instruction
¶25 Fennell argues that the trial court erred when it read WIS JI-CRIMINAL 140 to the jury. He argues that the instruction's admonition to the jury, "you are not to search for doubt, you are to search for the truth," reduced the State's burden of proof, confused the jury, and misstated the law, thereby violating his due process rights.[2]
¶26 The trial court has broad discretion when instructing a jury. See State v. Neumann , 179 Wis. 2d 687, 699, 508 N.W.2d 54 (Ct. App. 1993). Whether the instructions correctly state the law is a question of law this court reviews de novo . See id. Whether a jury instruction violates due process is also a question of law. See State v. Tomlinson , 2002 WI 91, ¶53, 254 Wis. 2d 502, 648 N.W.2d 367.
¶27 "At the close of the evidence and before arguments to the jury, the [trial] court shall conduct a [jury instruction] conference with counsel outside the presence of the jury." WIS. STAT. § 805.13(3). "Counsel may object to the proposed instructions ... on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions[.]" Id.
¶28 Fennell concedes that his defense counsel did not object to WIS JI-CRIMINAL 140 at the instructions conference, but nonetheless relies on multiple law review articles to argue that the instruction was improper. We disagree.
¶29 A similar challenge to the propriety of WIS JI-CRIMINAL 140 was considered and rejected by our supreme court in State v. Avila , 192 Wis. 2d 870, 532 N.W.2d 423 (1995), overruled on other grounds by State v. Gordon , 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765. In Avila , Evaristo Avila challenged the same language from WIS JI-CRIMINAL 140 as Fennell: "While it is your duty to give the defendant the benefit of every reasonable doubt, you should not search for doubt. You should search for the truth." See id. , 192 Wis. 2d at 888. Avila argued "that, in light of this language, a juror acting reasonably would be reasonably likely to impose a lesser burden than reasonable doubt upon the State" and that "the language implies that truth and doubt are two separate concepts, i.e., that finding doubt would mean not finding the truth." Id. at 888-89. The supreme court rejected Avila's argument, concluding:
The instruction as a whole emphasizes with great clarity that the State bears the burden of proving the defendant's guilt beyond a reasonable doubt, and that a defendant is presumed innocent until that burden is met. In the context of the entire instruction, we conclude that [ WIS JI-CRIMINAL 140] ... which was read to the jury, did not dilute the State's burden of proving guilt beyond a reasonable doubt.
Avila , 192 Wis. 2d at 890.
¶30 In short, the Wisconsin Supreme Court concluded that the instruction is constitutional. We are bound by the supreme court's decision.[3] "The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." Cook v. Cook , 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).
IV. Sentencing
¶31 Fennell contends that the trial court erroneously exercised its sentencing discretion by "fashioning Fennell's sentence without giving any consideration to Fennell's individual characteristics or this case's specific mitigating and/or aggravating factors."
¶32 A challenge to a trial court's exercise of its sentencing discretion must overcome our presumption that the sentence was reasonable. See State v. Ramuta , 2003 WI App 80, ¶23, 261 Wis. 2d 784, 661 N.W.2d 483. A trial court erroneously exercises its sentencing discretion if it "failed to state on the record the material factors which influenced its decision or if it gave too much weight to one factor in the face of other contravening considerations." State v. Larsen , 141 Wis. 2d 412, 428, 415 N.W.2d 535 (Ct. App. 1987).
¶33 A trial court must explain its reasons for imposing a particular sentence on the record. State v. Hall , 2002 WI App 108, ¶¶9-18, 255 Wis. 2d 662, 648 N.W.2d 41. The court must consider the three primary sentencing factors: "(1) the gravity and nature of the offense, including the effect on the victim, (2) the character and rehabilitative needs of the offender, and (3) the need to protect the public." Id. , ¶7 (citation omitted). "Sentences are to be individualized to meet the facts of the particular case and the characteristics of the individual defendant." State v. Holloway , 202 Wis. 2d 694, 699-700, 551 N.W.2d 841 (Ct. App. 1996).
¶34 Here, the trial court considered circumstances relevant to the primary sentencing factors. Specifically, the court noted the increase in carjackings and the need "to make it quite clear that this is not going to be tolerated." The court also considered Fennell's character, noting that Fennell refused to take responsibility for the crime and needed to "grow up." The court discussed the need to protect the public, stating "the only way to protect the public is to lock this young man up for a lengthy period of time to make it quite clear that no one's going to get a slap on the wrist when they get arrested and convicted of car[ ]jacking in this community." The trial court did not erroneously exercise its discretion.
V. Interest of Justice
¶35 Finally, Fennell argues that he is entitled to a new trial in the interest of justice. Fennell's argument rests on his assertions that "evidence impeaching the credibility of the sole witness who identified Fennell as the robber was never presented," and that the jury instruction given on the State's burden of proof, WIS JI-CRIMINAL 140, impermissibly confused the jury.
¶36 WISCONSIN STAT. § 752.35 grants this court the discretionary power to reverse a conviction in the interest of justice where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." See State v. Langlois , 2018 WI 73, ¶54, 382 Wis. 2d 414, 913 N.W.2d 812. "Our discretionary reversal power is formidable, and should be exercised sparingly and with great caution." State v. Williams , 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. Accordingly, we will grant a new trial in the interest of justice "only in exceptional cases." See State v. Cuyler , 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983).
¶37 Because we have already addressed Fennell's arguments and have concluded that they lack merit, we decline to exercise our discretionary reversal authority and do not address this issue further.
¶38 For the foregoing reasons, we affirm.
By the Court. -Judgment and orders affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Wisconsin JI-Criminal 140, in its entirety provides:
In reaching your verdict, examine the evidence with care and caution. Act with judgment, reason, and prudence.
Presumption of Innocence
Defendants are not required to prove their innocence. The law presumes every person charged with the commission of an offense to be innocent. This presumption requires a finding of not guilty unless in your deliberations, you find it is overcome by evidence which satisfies you beyond a reasonable doubt that the defendant is guilty.
State's Burden of Proof
The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty.
Reasonable Hypothesis
If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and return a verdict of not guilty.
Meaning of Reasonable Doubt
The term "reasonable doubt" means a doubt based upon reason and common sense. It is a doubt for which a reason can be given, arising from a fair and rational consideration of the evidence or lack of evidence. It means such a doubt as would cause a person of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.
A reasonable doubt is not a doubt which is based on mere guesswork or speculation. A doubt which arises merely from sympathy or from fear to return a verdict of guilt is not a reasonable doubt. A reasonable doubt is not a doubt such as may be used to escape the responsibility of a decision.
While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth.
(Emphasis added.)

In May 2018, we issued an unpublished decision which rejected a similar challenge to Wis JI-Criminal 140 based on the Wisconsin Supreme Court's decision in State v. Avila , 192 Wis. 2d 870, 532 N.W.2d 423 (1995), overruled on other grounds by State v. Gordon , 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765. That case, State v. Trammell , is now before the Wisconsin Supreme Court for review. See id. , No. 2017AP1206, unpublished slip op. (May 8, 2018) review granted , 2018 WI 111, ¶13, 384 Wis. 2d 465 (Nov. 13, 2018).