COURT OF APPEALS
DECISION
DATED AND FILED

January 30, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1618-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF3854

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CALVIN SCOTT, JR.,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Calvin Scott, Jr. appeals from his judgment of conviction, entered upon a guilty plea, for second-degree sexual assault of a child, and from the order denying his motion for postconviction relief. Scott argues that the circuit court erred when it adopted the State's proposed findings of fact without making independent legal or factual findings in its denial of his motion for plea withdrawal after an evidentiary hearing. Upon review, we affirm.

## BACKGROUND

¶2      In August 2019, the State charged Scott with one count of second-degree sexual assault of a child under sixteen years of age and one count of repeated sexual assault of a child. The complaint alleged that from approximately February through August 2019, Scott repeatedly sexually assaulted his stepdaughter while her mother was asleep or at work.

¶3      On January 21, 2020, Scott elected to resolve the charges with a plea. The circuit court conducted the colloquy as follows:

> THE COURT: So the defendant's entering a plea of guilty to the second-degree sexual assault that carries up to 40 years and/or a $100,000 fine?
>
> [TRIAL COUNSEL:] Yes.
>
> THE COURT: And you understand, sir, if you're not a citizen of the United States, your plea could result in deportation, exclusion or denial of naturalization?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is the second count being dismissed and read-in, or what?
>
> [THE PROSECUTOR:] Correct.
>
> THE COURT: Okay. You are going to be waiving those constitutional rights that are contained in the form that you've signed. Your rights to a trial by jury. And all

2

twelve jurors must agree unanimously as to a verdict. That means they must all agree as to the elements of the offense beyond a reasonable doubt that you had sexual intercourse with the victim of the offense that was under the age of 16 at the time of the alleged intercourse. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You understand you're going to have to register as a sex offender?

THE DEFENDANT: Yes.

THE COURT: You also understand the [c]ourt's not bound by any negotiations or plea bargains?

THE DEFENDANT: Yes.

THE COURT: And you're going to be waiving any possible defenses that you may have to the offense charged in the criminal complaint. Do you understand that also?

THE DEFENDANT: Yes.

THE COURT: You're waiving your right to challenge the sufficiency of the criminal complaint, waiving your right to challenge the constitutionality of any police actions, such as any stop, arrest, search and seizure, or any statement that may have been made by yourself.

THE DEFENDANT: Yes.

THE COURT: Are you under some type of medication or treatment for mental illness?

THE DEFENDANT: No.

THE COURT: You're not. So you're not taking any drugs or anything of that nature?

THE DEFENDANT: Just what they give me downstairs.

THE COURT: Okay.

THE DEFENDANT: Medication, yes. I'm taking stuff for—for—I'm having bad things I went through. I'm on pretty high doses of stuff.

THE COURT: That doesn't interfere with your ability to understand what we're doing here today, does it?

3

THE DEFENDANT: I understand.

THE COURT: You understand everything?

THE DEFENDANT: Yes.

THE COURT: Okay. Is there anything that you do not understand by pleading guilty to the offense?

THE DEFENDANT: No.

THE COURT: And counsel, you're satisfied the defendant's intelligently, voluntarily and knowingly waiving those constitutional rights?

[TRIAL COUNSEL:] Yes.

THE COURT: What's your plea, sir, to the charge of second-degree sexual assault of a child?

THE DEFENDANT: Guilty.

THE COURT: On that plea, then, the [c]ourt will make a finding of guilt. And the [c]ourt will use the criminal complaint as a factual basis for the plea and waive any other testimony. No objections?

[THE PROSECUTOR:] No objection.

¶4     Ten days later, the circuit court sentenced Scott on the count of second-degree sexual assault of a child. The court imposed a sentence of twenty years of imprisonment, bifurcated as twelve years of initial confinement and eight years of extended supervision.

¶5     Scott filed a WIS. STAT. RULE 809.30 (2021-22)[1] postconviction motion in September 2021. He requested an evidentiary hearing on his claim that it would be a manifest injustice not to allow him to withdraw his plea. He argued that the circuit court's plea colloquy with him was constitutionally deficient and

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that the court failed to fulfill its duties under WIS. STAT. § 971.08. He asserted that the court failed to verify six issues: (1) that he understood the terms of the plea agreement; (2) that he was capable of entering a knowing and intelligent plea; (3) that he understood the crime to which he was pleading; (4) whether there were any threats or promises made to induce his plea; (5) that he understood the constitutional rights he was waiving; and (6) that he understood the significance of a read-in charge. Finally, he argued that he was entitled to plea withdrawal because of ineffective assistance of counsel.

¶6     The circuit court held an evidentiary hearing in July 2022.[2] The State began by calling trial counsel, who explained that he met in person with Scott and they each reviewed the plea questionnaire form. Trial counsel reviewed exhibit one, the plea questionnaire/waiver of rights form and the addendum, identified his own signature on the form, and confirmed that it was the same form he reviewed with Scott. Trial counsel affirmed that the plea agreement stated "If defendant takes full responsibility in this matter by pleading guilty to Count [one], the State will dismiss and read-in Count [two]."

¶7     Trial counsel testified that he considered the plea a "good deal" to limit Scott's prison exposure, from eighty years to forty years. Trial counsel explained to Scott that the State's offer of a recommendation of "substantial prison time" did not mean probation, and that trial counsel could not give a specific number of years the judge might choose. However, in his opinion, it "sometimes

---

[2] In response, the State argued that Scott failed to make a prima facie case for his claims based on his capability of entering a knowing and intelligent plea, his understanding of the nature of the charges, and the significance of the read-in charge. However, the State conceded that he sufficiently alleged his remaining claims to be entitled to an evidentiary hearing. The record does not make clear whether the circuit court limited Scott's claims during the evidentiary hearing. .

mean[t] double digits on a case where there's a 40-year maximum." Trial counsel explained that whatever was recommended, the circuit court still could do what it wanted. Trial counsel also explained that a "read-in" count means "you can't be sentenced for it, you can't be charged with it in the future, so it's gone forever, but the judge can consider the conduct when he makes his sentence."

¶8 Trial counsel testified that he reviewed discovery in the case and that the DNA reports showed Scott's DNA was found on the victim's vagina and cervix. Trial counsel stated that Scott also looked at the evidence and that the DNA results motivated his plea.

¶9 Trial counsel reviewed exhibit two, a letter from the prosecutor to Scott's original attorney outlining the proposed plea agreement.[3] Trial counsel testified about his understanding of prior plea negotiations: Scott's original attorney asked the prosecutor to amend the charge to third-degree "with the understanding that the State could ask for [the maximum], which would have been five [years of initial confinement] and five [years of extended supervision]." Trial counsel stated that he believed Scott's reference to "five years" comes from that negotiation. The State refused to amend the charge. Scott asked trial counsel to ask again; trial counsel did so and the State continued to refuse. Scott pled to the original offer from the State.

---

[3] Scott's original attorney represented him during the preliminary hearing in September 2019, during which the court commissioner affirmed that Scott reviewed the preliminary hearing questionnaire and waiver form with his attorney. However, Scott's attorney moved to withdraw in November for conflict of interest after Scott filed an Office of Lawyer Regulation (OLR) complaint against her. Scott's original attorney was not called as a witness at the evidentiary hearing. Scott's trial counsel was appointed later in September 2019.

¶10     Trial counsel testified that he reviewed exhibit three, the jury instructions, with Scott; he "went through the jury instructions for this offense, went through the facts of the case, put the form in front of [Scott].  He read through it.  He signed it."  He explained that the jury instruction for second-degree sexual assault can be based on sexual contact or intercourse and that contact was crossed out because the theory of the case was intercourse.

¶11     Trial counsel stated that he was "satisfied that we went through the process of filling out … the plea form" and that they reviewed the forms for about forty-five minutes.  Trial counsel testified that he preferred to explain what the terms on the forms meant, not to just restate terms like you have a "right to a trial."  Trial counsel testified that Scott reviewed the plea documents thoroughly because he was "anxious about this plea and what was going to happen."  Trial counsel testified that Scott did not seem impaired or affected by medication.  He believed that Scott was able to effectively communicate with him and understood what was happening.

¶12     During cross-examination, trial counsel testified that he wrote in "depression" after checking "no" next to the question of whether Scott had a diagnosis of a mental illness.  He believed he filled out the question about "alcohol, medication, or drug" use as Scott instructed, checking no.  He did not do any independent investigation into Scott's mental health or medical treatment.  Trial counsel stated that he was not a medical professional, he was not an expert in whether someone is impaired, and he was not an expert on whether mental health would interfere with understanding or comprehension.

¶13     Scott then testified, stating that when he met with trial counsel, he explained that his original counsel had gotten him a deal for five years, and that he

signed paperwork to that effect. He stated he gave this paperwork to trial counsel. Scott stated that he assumed the first deal was the plea agreement trial counsel was going to pursue and that they did not have any other discussions about it. Scott stated that trial counsel stated that they would leave the probation time up to the State. He testified that he believed the deal was "[f]ive years and leave it up to the [S]tate for probation."

¶14 Scott testified that trial counsel did not review the plea agreement, the plea questionnaire, or the waiver of rights forms with him. He stated that trial counsel said this was "the best you can get" because "if you go to trial, you will lose." Scott stated that he did not read anything, just discussed the documents with trial counsel. He said he looked over a document and said he did not understand the terms, and trial counsel responded, "Well, we understand what is going on. Just sign right here." He stated that trial counsel did not go over the jury instructions, or explain the elements the State would need to prove to a jury. He testified that they talked and then he signed the paperwork that trial counsel gave him without reading it.

¶15 Scott testified that trial counsel did not discuss his constitutional rights or mental health. He stated that when trial counsel met with him, he said Scott looked tired, and Scott explained he was tired from new medication. Upon questioning from postconviction counsel, Scott recalled that during the plea hearing, he said he was on "pretty high doses" of medications.

¶16 During the redirect examination, the prosecutor showed Scott exhibits one and two. Scott conceded that the description of the plea agreement and his signature looked "right." He agreed that neither document referenced five years in prison.

¶17     The prosecutor also asked Scott that if they reviewed the plea hearing transcript, would it show that trial counsel stated the plea agreement on the record, and that Scott did not object to the phrasing of the plea agreement. Scott replied that he looked at trial counsel, who said to him, "I got this. Don't worry about this."

¶18     Scott acknowledged sending multiple letters while the case was pending, including three to the circuit court in September and October 2019, and January 2020. Scott was asked if those letters discussed the plea agreement, and he stated that he instead wrote to the Wisconsin Supreme Court after sentencing. Although Scott produced a copy of the letter, the circuit court did not receive it and did not consider it relevant. Further, Scott acknowledged sending two letters to the circuit court after sentencing that did not raise concerns about the plea.

¶19     The circuit court further questioned Scott by referencing the plea hearing transcript. The court quoted two questions, where Scott said he understood that the court was not bound by any plea agreement and that he understood the proceedings despite being on medication.

¶20     The circuit court ordered the State and the defense to simultaneously submit findings of fact and conclusions of law. The circuit court issued a written decision denying Scott's motion for postconviction relief on September 20, 2022. The court's written decision stated that it "agree[d] with the proposed findings of fact and conclusions of law submitted by the State on August 6, 2022[,] and adopts those findings and conclusions of law as the decision of the court." The court also made independent findings that "the court found the testimony of [trial counsel] credible and the testimony of [Scott] not credible." The court concluded that "the

State has met its burden of demonstrating by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered."

¶21 The circuit court struck the State's finding that "other claims" had been withdrawn or denied without a hearing, and instead found that the evidentiary hearing addressed Scott's ineffective assistance of counsel claim. The court concluded that Scott "failed to demonstrate that his attorney miscommunicated the plea deal or that he relied on any alleged miscommunication in deciding to enter his plea." The court then concluded that "[c]onsequently, counsel was not ineffective and the defendant was not prejudiced[,]" and denied any ineffective assistance of counsel claim.

¶22 The State's findings of fact and conclusions of law included that Scott had "[twelve] years of schooling, understands English, understands the charges to which he is pleading, that he is receiving treatment for depression, and that he has taken either alcohol, medication, or drugs in the past 24 hours." The forms stated that Scott understood that he was giving up constitutional rights, that the circuit court is not bound by the plea agreement, that the maximum penalty was forty years and a $100,000 fine, that he was entering the plea of his own free will, and that he was not threatened or forced to enter the plea.

¶23 The State's findings also included that during the plea colloquy, Scott "was present when the negotiations were put on the record and did not dispute them." It also stated that Scott "stated that his depression medication does not interfere with his ability to understand what is going on, and, that he did understand everything that was going on."

¶24 This appeal follows.

**DISCUSSION**

¶25 Scott argues that the circuit court's adoption of the State's findings of fact meant that the court failed to exercise its discretion when it denied his motion for postconviction relief. He asserts that the State failed to satisfy its burden by clear and convincing evidence that Scott's plea was entered knowingly, intelligently, and voluntarily. Scott's appeal renews his postconviction motion's claims of six issues that he asserts make his plea not knowing, intelligent and voluntary: (1) his understanding of the plea agreement; (2) his ability to enter a knowing and intelligent plea; (3) his understanding of the nature of the charge, including the definition of the term "intercourse" in the charge; (4) whether his plea was voluntary, with an absence of threats or promises; (5) his understanding of his constitutional rights; and (6) his understanding of a read-in charge.

*I.     Scott has not shown that the court's findings were clearly erroneous*

¶26 We begin with Scott's claim that the circuit court abdicated its duties by adopting the State's findings of facts. "A circuit court is not prohibited from adopting the brief of one of the parties as its decision in the case." **State v. Lock**, 2013 WI App 80, ¶10, 348 Wis. 2d 334, 833 N.W.2d 189. "However, if a circuit court chooses to adopt a party's brief, it is required to indicate the factors on which it relied when making its decision and state those on the record." **Id.** Scott asserts that the circuit court failed to state on the record the basis of its reasoning. We disagree. The circuit court's written decision was brief, but when faced with almost entirely opposite testimony about what trial counsel told Scott, the court found trial counsel to be credible and Scott incredible.

¶27 As the State argues, we must accept the circuit court's credibility determinations unless they are clearly erroneous. When acting as a fact finder, the

circuit court is the "ultimate and final arbiter of the credibility of witnesses," and this court must accept the circuit court's credibility determination. *Nicholas C.L. v. Julie R.L.*, 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508. "An appellate court will not overrule a circuit court's credibility determination absent a finding that it is 'inherently or patently incredible,' or 'in conflict with the uniform course of nature or with fully established or conceded facts.'" *Id.* (citation omitted).

¶28 Our examination of the record shows that the circuit court's credibility determinations were not inherently incredible or in conflict with established facts. Exhibits one and three show Scott's signature, which matches trial counsel's account of explaining the plea agreement and charge to Scott. Scott does not dispute it was his signature. Scott's testimony was illogical, asserting that his original attorney had negotiated a deal for five years, but he did not accept that deal, he filed an OLR complaint against her, and he could not produce any documentation of that offer. In contrast, the State presented exhibit two, which showed the plea offer from the State to Scott's original attorney and described the terms of the plea agreement Scott eventually entered into.

¶29 At the evidentiary hearing, trial counsel and Scott testified to every contested fact as to the nature of Scott's understanding of the plea. Scott's testimony contradicted trial counsel's testimony in almost every respect; therefore, the court's credibility determinations affected nearly every relevant fact. Scott argues that the circuit court's decision was conclusory because of the brevity of its findings. However, even if the circuit court "inadequately explains the reasons for its decision, the reviewing court must independently review the record to find support for the circuit court's decision if the justification is there." *State v. Jenkins*, 2007 WI 96, ¶46, 303 Wis. 2d 157, 736 N.W.2d 24. Our examination of

the record shows there was ample evidence in the record upon which the circuit court could rely including the detailed testimony of trial counsel and the three exhibits presented by the State.

¶30 Scott argues that the circuit court's findings were clearly erroneous to the extent that the court relied upon two of the State's findings: that the plea negotiations were placed on the record by trial counsel[4] and that Scott filed numerous *pro se* motions during and after the plea hearing.[5] We share concerns

[4] Although the State argues that the circuit court's statement in the plea colloquy: "So the defendant's entering a plea of guilty to the second-degree sexual assault that carries up to 40 years and/or a $100,000 fine?" is a statement of the plea agreement, it is difficult to consider that an adequate discussion of the plea negotiation. It appears perfunctory. As our supreme court has discussed, "[t]he plea hearing colloquy must not be reduced to a perfunctory exchange." *State v. Bangert*, 131 Wis. 2d 246, 278-79, 389 N.W.2d 12 (1986). Nevertheless, this does not rise to a clearly erroneous finding, and it does not undermine the circuit court's ultimate credibility determination. We caution the State about its characterization of the record. During the evidentiary hearing, the prosecutor asked Scott: "Would you disagree if I told you that in the transcript of the plea your lawyer … said the plea agreement on the record, right? And you didn't dispute that. You didn't speak up and say, 'Hey, that's not the agreement.'" This is problematic because our examination of the plea hearing transcript does not show trial counsel putting the plea agreement on the record. As recited earlier in this decision, trial counsel spoke two words during the hearing, responding "yes" when the court stated the charge and possible sentence and then again, "yes" when the court asked if he believed Scott's waiver of his constitutional rights was knowing, intelligent and voluntary. We presume the transcript was available during the evidentiary hearing because the circuit court appeared to quote from it in its examination of Scott. The State's finding as adopted by the circuit court appears to overstate the discussion of the plea agreement.

[5] Scott argues that the State misstated the record in its findings by labeling his letters to the court as motions. The State argues that the labels of the documents are not dispositive, and in any case, Scott does not dispute that he requested relief in those letters. The record reflects that Scott filed three letters before the plea hearing and two letters between the plea hearing and the sentencing hearing. "Under our rules, a defendant can wait until he knows his sentence before he moves to withdraw his plea, and he may not be disadvantaged by this delay as long as he is able to point to a deficiency in the plea colloquy." *State v. Brown*, 2006 WI 100, ¶38, 293 Wis. 2d 594, 716 N.W.2d 906. If we accept Scott's claimed belief about the meaning of the plea agreement, there would be no reason for him to raise a concern that the plea agreement was wrong until after sentencing. The record further reflects that Scott requested sentence modification in a motion in January 2021, a year after he was sentenced. However, a *Bangert* violation does not provide a legal basis for sentence modification. In any case, the issue of the letters does not rise to a clearly erroneous finding, and it does not undermine the circuit court's ultimate credibility determination.

about some of the State's findings; however, those concerns do not overcome that the circuit court had ample evidence to make credibility determinations.

¶31 Additionally, Scott argues that the circuit court misstated the legal standard by which a post-sentencing plea withdrawal motion is assessed. The State concedes that the court used the presentencing "fair and just" reason language in the decision but argues that the court also correctly stated the standard of manifest injustice. Scott has not shown that the court applied the wrong legal standard.

¶32 Scott also argues that the circuit court was confused because it denied the ineffective assistance of counsel claim that he did not pursue at the evidentiary hearing. Scott acknowledges that there was ambiguity about the status of the ineffective assistance of counsel claim because there was no express withdrawal of the claim. Our examination of the record shows that the circuit court succinctly denied that Scott had the ineffective assistance of counsel. Although it is better practice to determine the claims before the court, the circuit court's findings were not clearly erroneous and do not undermine confidence in its ultimate decision.

¶33 We conclude that the circuit court's credibility determinations were not clearly erroneous, and we therefore will uphold them. The court sufficiently stated its reasoning and its adoption of the State's findings did not abdicate its authority. *See Lock*, 348 Wis. 2d 334, ¶10.

*II.     Scott has not shown a manifest injustice if plea withdrawal were not granted*

¶34     We now turn to Scott's argument for plea withdrawal. "When a defendant seeks to withdraw a guilty plea after sentencing, [the defendant] must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" ***State v. Brown***, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). A defendant may satisfy the burden to show manifest injustice by showing the plea was not knowingly, voluntarily, or intelligently entered. ***State v. Trochinski***, 2002 WI 56, ¶15, 253 Wis. 2d 38, 644 N.W.2d 891. The defendant must first make a showing of a prima facie violation of WIS. STAT. § 971.08(1)(a) or other mandatory duties and allege that the defendant "did not know or understand the information which should have been provided at the plea hearing[.]" ***State v. Bangert***, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986).[6] Then, the burden will "shift to the [S]tate to show by clear

---

[6] To satisfy its obligations under WIS. STAT. § 971.08, our supreme court has set forth the circuit court's duties as follows:

> (1) Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;
>
> (2) Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;
>
> (3) Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;
>
> (4) Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;

(continued)

and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." *Id.*

¶35 On appellate review, the issue of whether a plea was knowingly, voluntarily, and intelligently entered presents a question of constitutional fact. *State v. Bollig*, 2000 WI 6, ¶13, 232 Wis. 2d 561, 605 N.W.2d 199. "We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Brown*, 293 Wis. 2d 594, ¶19. "[T]he reviewing court may look to the entire record to make

---

(5) Establish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea;

(6) Ascertain personally whether a factual basis exists to support the plea;

(7) Inform the defendant of the constitutional rights he [or she] waives by entering a plea and verify that the defendant understands he [or she] is giving up these rights;

(8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;

(9) Notify the defendant of the direct consequences of his plea; and

(10) Advise the defendant that "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law," as provided in []§ 971.08(1)(c).

*Brown*, 293 Wis. 2d 594, ¶35 (footnotes omitted).

such measurement" of the defendant's understanding of the nature of the charge and the waiver of constitutional rights. ***Bangert***, 131 Wis. 2d at 283.

¶36     The State concedes that the circuit court's plea colloquy with Scott was inadequate in certain respects. To rebut the defendant's claim, the State may "utilize any evidence which substantiates that the plea was knowingly and voluntarily made." ***Id.*** at 274-75. During the evidentiary hearing, the State examined trial counsel and introduced three exhibits: (1) the plea questionnaire, waiver of rights form, and addendum, which included the terms of the plea agreement; (2) the plea offer sent to Scott's original counsel in September 2019; and (3) the jury instructions for second-degree sexual assault of a child. Scott's testimony does not dispute the veracity of these exhibits; although his testimony recounting what trial counsel told him before his plea is entirely different than the testimony of trial counsel. Most important to our review is the circuit court's finding that trial counsel was credible and Scott was incredible.

¶37     With the entire record and circuit court's credibility findings before us, we now review Scott's claims. The first issue is Scott's understanding of the plea agreement. Trial counsel's credible testimony established that he discussed the plea agreement with Scott, and he wrote down the plea agreement on the plea questionnaire form for Scott to read. Trial counsel attempted and failed to negotiate a reduced charge for Scott, the same negotiation that failed for Scott's original attorney. Scott acknowledged seeing the plea questionnaire form and his incredible testimony is the only evidence of another plea agreement negotiated by his original attorney that he intended to enter into. With the signed, undisputed plea questionnaire in the record, we conclude that the State showed that Scott understood the plea agreement.

¶38    Scott's second claim is that the State failed to show his ability to enter a knowing and intelligent plea, particularly with respect to his medication usage. In the plea colloquy, Scott affirmed that his medication did not impair his ability to understand the proceedings. Trial counsel's credible testimony was that Scott was on medication for depression. While acknowledging that trial counsel is not a mental health expert, trial counsel did not consider Scott impaired. Scott's own testimony was that he was tired and on high doses of medication. However even if Scott's testimony had been found credible, he did not explain how the depression treatment rendered him unable to make a knowing and intelligent plea. We conclude the State has presented sufficient evidence to show that Scott had the ability to enter into a knowing and intelligent plea.

¶39    Scott's third claim is that the State failed to show his understanding of the nature of the charge. Scott argues that he did not understand the term "intercourse" in the charge for second-degree sexual assault of a child–sexual intercourse with a person not yet sixteen years old. The record reflects that the circuit court's discussion of the nature of the charge was inadequate, with no questions to gauge Scott's understanding. Similar to our supreme court's criticism in *Bangert*, "[t]he elements of the crime were not discussed; no jury instructions were read." *Id.*, 131 Wis. 2d at 280. Nevertheless, during the evidentiary hearing, trial counsel testified about reviewing the jury instructions with Scott and explaining why intercourse was the theory of the charge and not sexual contact. Trial counsel also testified that Scott was focused on the plea after they reviewed the discovery evidence that included that Scott's DNA was found on the victim's cervix and vagina. The record reflects that Scott signed the jury instructions when he reviewed them with trial counsel. We conclude that the State showed that Scott understood the nature of the charge.

¶40    For Scott's fourth and fifth claims, Scott concedes that if he was properly found incredible, that the State satisfied its burden of proof. Because we have concluded that the circuit court's finding that Scott's testimony was incredible was not clearly erroneous, we agree that the State satisfied its burden.

¶41    Scott's sixth claim is that the State failed to verify Scott's understanding of a read-in charge. Scott argues that trial counsel's explanation of a read-in count was insufficient to make Scott's plea knowing, intelligent, and voluntary. The record reflects that trial counsel testified that he explained a read-in charge as follows: "you can't be sentenced for it, you can't be charged with it in the future, so it's gone forever, but the judge can consider the conduct when he makes his sentence." Scott asserts that trial counsel failed to explain the current Wisconsin Supreme Court guidance that "the read-in charge will be considered by the sentencing court[.]" *State v. Sulla*, 2016 WI 46, ¶35, 369 Wis. 2d 225, 880 N.W.2d 659. However, when we consider the full passage in *Sulla*, Scott's claim falls short. Our supreme court stated:

> [C]ounsel and courts should advise defendants that (1) the read-in charge will be considered by the sentencing court, but the maximum penalty will not be increased; (2) the defendant may be required to pay restitution on the read-in charge; and (3) the defendant may not be prosecuted for the read-in charge in the future.

*Id.*    We conclude that trial counsel's explanation was imperfect, but it was sufficient to state the law.

¶42    We note that Scott's complaints about the inadequacy of the plea colloquy was fair. Our examination of the record shows that the plea colloquy was "perfunctory" and did not show the attention and inquisitiveness that Wisconsin demands in these situations. *See Bangert*, 131 Wis. 2d at 268-69. We

caution the circuit court to perform these mandatory duties with greater care. In this case, the evidentiary hearing showed that trial counsel ensured that the defendant was properly aware of the nature of the charges, the plea offer, the constitutional rights being waived, and the court's possible actions at sentencing. "[I]f a defendant does understand the charge and the effects of his plea, he should not be permitted to game the system by taking advantage of judicial mistakes." *Brown*, 293 Wis. 2d 594, ¶37. Therefore, we conclude it would not show a manifest injustice to refuse to allow Scott to withdraw his plea. We affirm the circuit court's decision to deny Scott postconviction relief.

## CONCLUSION

¶43 For the reasons stated above, we conclude that the circuit court's findings were not clearly erroneous and that Scott has failed to show a manifest injustice based on a *Bangert* violation if he were not allowed to withdraw his plea.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.