STATE of Wisconsin, Plaintiff-Respondent,

v.

Fernando ORTIZ-MONDRAGON,
Defendant-Appellant.†

Court of Appeals

*No. 2013AP2435–CR. Submitted on briefs September 9, 2014.
—Decided October 7, 2014.*

2014 WI App 114

(Also reported in 856 N.W.2d 339.)

† Petition for Review Filed.

423

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michelle L. Velasquez*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Nancy A. Noet*, assistant attorney general.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. HOOVER, P.J. Fernando Ortiz-Mondragon appeals a judgment of conviction for several domestic abuse related charges and an order denying his motion for postconviction relief. Ortiz-Mondragon argues he is entitled to withdraw his plea because his attorney was ineffective for failing to inform Ortiz-Mondragon that his plea would result in mandatory deportation and permanent inadmissibility to this country. We conclude counsel performed adequately by informing Ortiz-Mondragon that his plea carried the possibility of these consequences. Accordingly, we affirm.

## BACKGROUND

¶ 2. Ortiz-Mondragon was charged with substantial battery, false imprisonment, felony intimidation of a victim, criminal damage to property, and disorderly conduct, all with the domestic abuse enhancer. The charges arose from a single episode. Pursuant to a plea agreement, the State dismissed the false imprisonment and intimidation charges. Ortiz-Mondragon pled to the remaining charges, and the court imposed the jointly recommended sentence of three years' probation with four months' conditional jail time. According to Ortiz-Mondragon, after completing the jail time he was taken into custody by Immigration and Customs Enforcement and removal[1] proceedings were commenced. In order to avoid having a deportation on his record, he agreed to a voluntary departure.

[1] The terms removal and deportation are used interchangeably in immigration law. *See Padilla v. Kentucky*, 559 U.S. 356, 364 n.6 (2010).

¶ 3. Ortiz-Mondragon subsequently moved to withdraw his plea. He argued counsel was ineffective for failing to inform him his plea would result in mandatory deportation and permanent inadmissibility to the United States, as opposed to merely informing him that these consequences were a possibility. He asserted his conviction for substantial battery as an act of domestic abuse made him ineligible to apply for cancellation of removal from the United States because the crime is considered a crime involving moral turpitude and is not eligible for any exception. Ortiz-Mondragon argued counsel had a duty to inform him of the mandatory immigration consequences of his plea under *Padilla v. Kentucky*, 559 U.S. 356 (2010). Further, he argued counsel's deficient performance prejudiced him because if he had known the mandatory immigration consequences of his plea he would have either attempted to negotiate a different plea agreement or insisted on going to trial.

¶ 4. The circuit court denied Ortiz-Mondragon's motion without a *Machner* hearing.[2] It concluded the generic immigration warning in the Plea Questionnaire and Waiver of Rights form Ortiz-Mondragon executed and the court's warning pursuant to Wis. Stat. § 971.08(1)(c) provided sufficient notice under *Padilla*.[3] Ortiz-Mondragon appeals.

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] The plea form states "I understand that if I am not a citizen of the United States, my plea could result in deportation, the exclusion of admission to this country, or the denial of naturalization under federal law." Similarly, Wis. Stat. § 971.08(1)(c) provides:

Before the court accepts a plea of guilty or no contest, it shall do all of the following: ... Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United

## DISCUSSION

¶ 5. Ortiz-Mondragon seeks to withdraw his guilty plea due to ineffective assistance of trial counsel. A defendant seeking to withdraw a plea after sentencing must prove by clear and convincing evidence that refusal to permit withdrawal would result in "manifest injustice." *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). "[T]he 'manifest injustice' test is met if the defendant was denied the effective assistance of counsel." *Id.* To prove ineffective assistance of counsel, a defendant must satisfy a two-prong test by demonstrating both that counsel's performance was deficient and that the deficiency resulted in prejudice. *Id.* at 312. Whether counsel's performance was deficient and prejudicial presents a question of law we review de novo. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990). A circuit court may deny a postconviction motion without a hearing "if all the facts alleged in the motion, assuming them to be true, do not entitle the movant to relief; if one or more key factual allegations in the motion are conclusory; or if the record conclusively demonstrates that the movant is not entitled to relief." *State v. Allen*, 2004 WI 106, ¶ 12, 274 Wis. 2d 568, 682 N.W.2d 433 (footnote omitted).

¶ 6. Ortiz-Mondragon argues his trial counsel performed deficiently by failing to inform him his plea would result in mandatory deportation and permanent

States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

inadmissibility to the United States. In *Padilla,* the Supreme Court held "that constitutionally competent counsel would have advised [Padilla] that his conviction for drug distribution made him subject to automatic deportation." *Padilla,* 559 U.S. at 360. The Court explained:

> Under contemporary law, if a noncitizen has committed a removable offense . . ., his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. *See* 8 U.S.C. § 1229b. Subject to limited exceptions, this discretionary relief is not available for an offense related to trafficking in a controlled substance. *See* § 1101(a)(43)(B); § 1228.

*Id.* at 363–64 (footnote omitted). Thus, the Court observed, "The importance of accurate legal advice for noncitizens accused of crimes has never been more important. . . . [D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty . . . ." *Id.* at 364 (footnote omitted). Accordingly, the Court held "counsel must advise [his or] her client regarding the risk of deportation." *Id.* at 367.

¶ 7. The *Padilla* Court then proceeded to the underlying facts of the case. It held as follows:

> In the instant case, *the terms of the relevant immigration statute* are *succinct, clear, and explicit* in defining the removal consequence for Padilla's conviction. *See* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law . . . relating to a controlled substance . . ., other than a single offense involving [minor] possession . . . of marijuana, is deportable."). Padilla's counsel could have

easily determined that his plea would make him eligible for deportation simply from reading *the text of the statute, which addresses not some broad classification of crimes* but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. ... This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. *When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice ALITO), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.* But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* at 368–69 (footnote omitted) (emphasis added).

¶ 8. Justice Alito disagreed with the rule adopted by the majority, but concurred because he agreed counsel performed deficiently by informing Padilla he did not risk deportation. *Id.* at 375 (J. Alito, concurring). Justice Alito opined the majority's "vague, halfway test will lead to much confusion and needless litigation." *Id.* He explained:

The Court's new approach is particularly problematic because providing advice on whether a conviction for a

particular offense will make an alien removable is often quite complex. "Most crimes affecting immigration status are not specifically mentioned by the [Immigration and Nationality Act (INA)], but instead fall under a broad category of crimes, such as *crimes involving moral turpitude* or *aggravated felonies*." As has been widely acknowledged, determining whether a particular crime is . . . a "crime involving moral turpitude [(CIMT)]" is not an easy task.

*Id.* at 377–78 (brackets in original) (source omitted). Justice Alito further explained that the majority's approach was problematic for four reasons. His primary reason was as follows:

First, it will not always be easy to tell whether a particular statutory provision is "succinct, clear, and explicit." How can an attorney who lacks general immigration law expertise be sure that a seemingly clear statutory provision actually means what it seems to say when read in isolation? What if the application of the provision to a particular case is not clear but a cursory examination of case law or administrative decisions would provide a definitive answer?

*Id.* at 381. The latter question is at the heart of the issue here.

■

¶ 9. Ortiz-Mondragon argues the immigration statute succinctly, clearly and explicitly states that crimes of moral turpitude subject a noncitizen to deportation and permanent inadmissibility in the same manner as controlled substance crimes. The State does not dispute this assertion. However, the State aptly stresses that the immigration statute neither defines nor gives examples of crimes of moral turpitude, and argues Justice Alito correctly explained that it is a difficult task to determine whether a given crime will be treated

430

as one of moral turpitude by the Board of Immigration Appeals or the federal courts. Thus, the State argues, the deportation consequences of Ortiz-Mondragon's plea were not clear.

¶ 10. In response, Ortiz-Mondragon cites—for the first time in his reply brief[4]—one unpublished case standing for the proposition that immigration consequences are "clear" under *Padilla* if a cursory examination of the case law reveals a crime is one of moral turpitude. In *Montes-Flores v. U.S.*, 2013 WL 428024, at *4–5 (unpublished, S.D. Ind. 2013), the court found counsel deficient for failing to learn that the crime of making a material false statement contrary to 18 U.S.C. § 1001 was one of moral turpitude. The court reasoned:

> While crimes of "moral turpitude" are not specifically defined in the statute, ... the Seventh Circuit has repeatedly held that '[t]here can be no question that a violation of section 1001 is a crime involving moral turpitude.' ... Therefore, the deportation consequences of a conviction under § 1001 were "truly clear" and the duty of Montes–Flores' counsel to give correct legal advice was "equally clear." *Padilla*, 130 S.Ct. at 1483.

*Id.* at *4 (citations omitted).

¶ 11. Even if we were to agree with the limited holding in *Montes-Flores*, Ortiz-Mondragon does not argue that any case has ever held that any of his crimes have been explicitly recognized as involving moral turpitude. Instead, he contends "the federal courts are in accord that a crime involving an intentional act and actual injury in a domestic situation is a [crime involving moral turpitude]." But, Ortiz-Mondragon does not

---

[4] We need not address issues raised for the first time in a reply brief. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981).

431

cite any cases actually stating as much. Instead, he merely provides "see, e.g." and "see" citations to various cases where a court held that a particular crime purportedly fitting his self-created category was found to be a crime of moral turpitude, or where one or more elements of his category was discussed. For example, one of the two primary cases he relies on did not even involve a domestic situation, *see Garcia-Meza v. Mukasey*, 516 F.3d 535, 536 (7th Cir. 2008) (aggravated battery of a peace officer), and the other interpreted a domestic abuse crime involving not mere injury, but "corporal injury resulting in a traumatic condition," *see Grageda v. U.S. I.N.S.*, 12 F.3d 919, 921 (9th Cir. 1993), *superseded by statute as stated in Planes v. Holder*, 652 F.3d 991 (9th Cir. 2011).[5]

---

[5] Even the primary cases Ortiz-Mondragon relies on recognize moral turpitude is a vague concept. In *Garcia-Meza v. Mukasey*, 516 F.3d 535, 536 (7th Cir. 2008), the court explained:

> Although the phrase "crime involving moral turpitude" is notoriously baffling, the Supreme Court has rejected a vagueness challenge to it . . . . The Board defines crime of moral turpitude as "conduct that shocks the public conscience as being 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.' " We put our own gloss on the term in [a prior case], stating that crimes of moral turpitude are usually serious crimes (in terms of the magnitude of the loss they cause or the indignation in the public they arouse) that are committed deliberately.

(Citations omitted.) Similarly, in *Grageda v. U.S. I.N.S.*, 12 F.3d 919, 921 (9th Cir. 1993), the court explained:

> Describing moral turpitude in general terms, courts have said that it is an "act of baseness or depravity contrary to accepted moral standards." [Described in another case as] (an act "so basically offensive to American ethics and accepted moral standards"). Whether a particular crime involves moral turpitude "is determined by the statutory definition or by the nature of the crime not by the specific conduct that resulted in the conviction.

(Citations omitted.)

¶ 12. If an attorney must search federal court and unfamiliar administrative board decisions from around the country to identify a category of elements that together constitute crimes of moral turpitude, and then determine whether a charged crime fits that category, then the law is not "succinct, clear, and explicit." *See Padilla*, 559 U.S. at 368.

¶ 13. Ortiz-Mondragon asserts he pled guilty to a crime of moral turpitude. In contrast with the circumstances in *Padilla*, this category is a "broad classification of crimes" that escapes precise definition. *See id* . He has not identified clear authority indicating any of the crimes to which he pled were crimes of moral turpitude. Rather, this appears to be one of the "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *See id.* at 369. Accordingly, Ortiz-Mondragon's attorney did not perform deficiently by failing to unequivocally inform him that his plea would result in deportation and permanent inadmissibility.

*By the Court.*—Judgment and order affirmed.