COURT OF APPEALS
DECISION
DATED AND FILED

April 8, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1738-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF771

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

LAZARUS F. MEDINA,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN and MARK A. SANDERS, Judges. *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Lazarus F. Medina appeals from the judgment of conviction for second-degree reckless homicide by use of a dangerous weapon and possession of a firearm by an adjudicated delinquent.  He also appeals from the order denying postconviction relief without a hearing.  Medina challenges the sufficiency of the evidence to support his conviction, arguing that the State failed to disprove his affirmative defense of self-defense beyond a reasonable doubt.  He also argues that the circuit court's sentence was unduly harsh and severe, constituting an erroneous exercise of discretion.  Upon review, we affirm.

## BACKGROUND

¶2    Medina was charged with felony murder and possession of a firearm by an adjudicated delinquent arising out of the shooting death of Donovagn Swanagan in June 2019 in the course of an armed robbery.  The State alleged that Medina and Lanz Harwell planned to meet Swanagan at South 56th Street and West Greenfield Avenue to buy a gun, but Harwell alleged that Medina planned to steal the gun from Swanagan.  Swanagan, holding a gun in the palm of his hand, climbed into the vehicle where Harwell and Medina were waiting. Medina grabbed the gun from Swanagan, and then Antonio Sanfilippo—who accompanied Swanagan, but did not enter the vehicle—approached the driver's side door, indicating an intent to rob Harwell and Medina.  Harwell exited the vehicle and heard shots inside the vehicle; Swanagan and Medina were both hit by gunfire. Swanagan fled the vehicle before succumbing to his injuries.  Police recovered two pistols during the investigation that they alleged were used in the shooting:  a .380 CF380 and a 9mm Glock.

¶3      The case proceeded to trial in September 2021.[1]  The State presented officers and detectives from the Milwaukee Police Department (MPD) and the West Allis Police Department (WAPD) and technical witnesses to establish Swanagan's death by homicide on June 14, 2019.[2]  The State also presented Harwell and Sanfilippo, who each testified after they had been separately convicted under a plea agreement in connection with Swanagan's death.[3]

¶4      The State's theory of the case was that Medina and Harwell headed to an arranged gun sale during which Medina planned to steal the gun from Swanagan.  However, Swanagan asked Sanfilippo to help him rob Medina during the same gun sale.  Instead of either robbery completing, Swanagan and Medina were each shot, and Swanagan died from his injuries.

¶5      Medina testified in his own defense, disputing Harwell's account that he planned to steal the gun from Swanagan.  He stated he agreed to pay Swanagan $350 for the Glock pistol and he had the money ready to do so.  He

---

[1] The Honorable Stephanie Rothstein presided over Medina's trial and sentencing.  The Honorable Mark A. Sanders presided over Medina's postconviction proceedings.  We refer to either judge as the circuit court.

[2] The circuit court admitted evidence based on the State and Medina's stipulation that Medina had been adjudicated delinquent as a juvenile (for an offense that would have been a felony if he were an adult) resulting in his prohibition of firearms possession; the medical examiner's conclusions that Swanagan died from homicide from a gunshot wound to the chest and abdomen and that the range of gunfire was indeterminate; and that the projectile recovered in the autopsy was sent to the Wisconsin State Crime Laboratory.

[3] The record reflects that Harwell testified that he was in custody for two counts of felony possession of a firearm and one count of second-degree recklessly endangering safety.  Harwell entered into a plea agreement with the State, in which he pled guilty to three counts connected to this incident and he agreed to testify in this matter.  Sanfilippo testified that he pled guilty to felony murder for his role in this crime and was in prison.  While Sanfilippo testified that he had been sentenced to six years of initial confinement for his role, Harwell was not sentenced until after Medina's trial.

stated that when Swanagan arrived, he saw Sanfilippo approach Harwell's window with a gun and then Swanagan stuck the Glock in Medina's face. He grabbed at the gun from Swanagan, but claimed he did not have control of it. He then realized he had been shot, and he and Harwell fled.

¶6 During the jury instructions conference, the State asked that the jury be given a lesser-included instruction for second-degree reckless homicide with the use of a dangerous weapon penalty enhancer. The circuit court granted the instruction request and also agreed to give a self-defense instruction for the lesser-included charge, upon the defense's argument that Swanagan had been acting recklessly and Medina was unarmed and fighting for his life.[4]

¶7 The jury found Medina guilty of two counts: the lesser-included charge of second-degree reckless homicide with use of a dangerous weapon and possession of a firearm by an adjudicated delinquent.

¶8 For the possession count, the circuit court sentenced him to a ten-year term, evenly bifurcated between initial confinement and extended supervision. For the reckless homicide count, the court sentenced him to fourteen years of initial confinement and ten years of extended supervision, to be served concurrently with the possession sentence.

---

[4] The circuit court also agreed to the defense's request for a jury instruction on coercion for the possession charge, based on the defense's argument that Swanagan pointed a gun in Medina's face, which coerced him into grabbing it and fulfilling the possession aspect of the charge.

¶9 Medina filed for postconviction relief under WIS. STAT. RULE 809.30 (2023-24)[5] and WIS. STAT. § 974.02. He argued that the State's evidence was insufficient to disprove beyond a reasonable doubt Medina's affirmative defense of self-defense for the second-degree reckless homicide offense. He also argued that his sentence was unduly harsh and severe, requesting a sentence modification to a lesser sentence. The circuit court denied his motion.[6]

¶10 Medina now appeals. We discuss additional relevant facts below.

## DISCUSSION

¶11 Medina renews his claims from his postconviction motion. Medina argues that the State failed to disprove Medina's self-defense affirmative defense beyond a reasonable doubt. He asserts that the circuit court's sentence was unduly harsh and seeks a sentence modification. We reject both arguments and discuss each argument below.

### I. Sufficiency of the evidence

¶12 "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law," which we review independently. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d

---

[5] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[6] The State argued that Medina did not need to file a postconviction motion with the circuit court but could directly appeal based on the sufficiency of the evidence and request sentence modification. *See* WIS. STAT. § 974.02(2). Medina asserted that postconviction relief for the claim of an unduly harsh sentence needed to be preserved. The circuit court concluded that it could not deny Medina's motion without rendering a decision. The court incorporated and adopted the State's postconviction response brief, which is permissible. *See State v. Lock*, 2013 WI App 80, ¶10, 348 Wis. 2d 334, 833 N.W.2d 189.

410. "Although the trier of fact must be convinced that the evidence presented at trial is sufficiently strong to exclude every reasonable hypothesis of the defendant's innocence in order to find guilt beyond a reasonable doubt," on appeal, the reviewing court may not substitute its "judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably," could have found the requisite guilt. ***State v. Poellinger***, 153 Wis. 2d 493, 503, 507, 451 N.W.2d 752 (1990).

¶13 "The burden of proof is upon the [S]tate to prove every essential element of the crime charged beyond reasonable doubt." ***Bautista v. State***, 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971). "In Wisconsin, it is also true that the burden is on the [S]tate to negate self-defense and other affirmative defenses of 'privilege' when they are in issue." ***State v. Staples***, 99 Wis. 2d 364, 376, 299 N.W.2d 270 (Ct. App. 1980) (citation omitted).

¶14 To prove second-degree reckless homicide, the State had to prove beyond a reasonable doubt two elements: (1) Medina caused the death of Swanagan; and (2) Medina caused the death by criminally reckless conduct. WIS JI—CRIMINAL 1060.[7] The jury also had to decide, if they found Medina guilty of this crime, whether he committed it while using a dangerous weapon.

---

[7] Medina was charged with felony murder and the jury was instructed on the elements that proved that offense. In order to consider the lesser-included charge of second-degree reckless homicide, the jury had to find that felony murder was not proven beyond a reasonable doubt. "The submission of a lesser-included offense instruction is proper *only* when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." ***State v. Wilson***, 149 Wis. 2d 878, 898, 440 N.W.2d 534 (1989).

¶15     Additionally, the State also had to prove that Medina did not act lawfully in self-defense.  The circuit court instructed the jury on the law of self-defense, pursuant to WIS. STAT. § 939.48, which allows a defendant to "intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that the force used was necessary to prevent imminent death or great bodily harm to himself."  The court also instructed the jury that the defendant's belief may be reasonable even if it is mistaken.  Further, a defendant who "engages in unlawful conduct of a type likely to provoke others to attack, and who does provoke an attack, is not allowed to use or threaten force in self-defense against that attack."[8]

¶16     Medina's challenge is solely to the sufficiency of the State's evidence to disprove that he acted in lawful self-defense.  He asserts there is insufficient evidence that he was acting unreasonably when he grabbed the gun Swanagan was holding.  He contends Sanfilippo's testimony establishes that Swanagan created an unreasonable risk of harm by entering a vehicle with a loaded gun with the intent of robbing Medina.  The State argues that the only evidence in support of self-defense comes from Medina's testimony.  The record

---

[8] WISCONSIN STAT. § 939.48(2)(a) provides the effect of provocation on a self-defense claim, which is generally disallowed, with the following exception:

> [W]hen the attack which ensues is of a type causing the person engaging in the unlawful conduct to reasonably believe that he or she is in imminent danger of death or great bodily harm.  In such a case, the person engaging in the unlawful conduct is privileged to act in self-defense, but the person is not privileged to resort to the use of force intended or likely to cause death to the person's assailant unless the person reasonably believes he or she has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his or her assailant.

7

reflects that Medina offered few specifics about his actions to defend himself. The State also asserts that the jury had ample evidence upon which to determine the credibility of the witnesses and defendant and then reject Medina's version of events.

¶17    We recite from the trial testimony. Harwell, Sanfilippo, and Medina each testified about the arrangement to meet on June 14 for Swanagan to sell a Glock to Medina. A WAPD sergeant testified about retrieving and analyzing Medina's phone and photographing messages between Medina and Swanagan in June 2019. The detective presented screenshots of Facebook text messages between Medina and Swanagan that arranged the type of gun—a Glock, the price—$350, and the place to meet—South 56th Street and West Greenfield Avenue, on June 14, 2019. In messages from the days leading up to the meeting, Medina asked to delay payment, which the State argued implied he did not have the cash and intended to steal the Glock. Harwell testified that Medina told him he did not have any money that night.

¶18    Harwell testified that on the night of the incident he was partying with Medina and other friends at the house of his now ex-girlfriend. Harwell testified that Medina repeatedly asked for a gun and kept asking for a ride; he also stated that his girlfriend did not want him to go with Medina. Harwell stated that he understood that when they went to meet Medina's friend, Medina was going to "grab the gun out of the gentleman's hand." Harwell testified that he knew Medina was planning to steal the gun.

¶19    Harwell testified that he was carrying a Hi-Point .380 pistol when he drove Medina to meet Swanagan. Harwell also testified that he observed Swanagan in the back seat holding a gun, the Glock, with his palm open. Harwell

stated that Medina grabbed the Glock by the handle, pointed it to the back, and said "this is me," which Harwell believed was a reference that Medina considered the gun to be his. A WAPD detective testified that Harwell stated in his interview with police that Medina grabbed the gun from Swanagan's hand.

¶20 Harwell also testified that while Swanagan was inside his vehicle, Sanfilippo approached and reached into the vehicle window with a gun and hit Harwell with it. Harwell noticed the gun was shaking and he believed Sanfilippo was not familiar with guns. Harwell opened the driver's side door, pushing Sanfilippo down, exited and fired into the air three shots from the .380 he was carrying.

¶21 Harwell testified that he heard gunshots inside the vehicle. When Harwell reentered the vehicle, Swanagan jumped out of the vehicle and ran off. Harwell saw that Medina had the Glock in his lap, and a gunshot wound on his wrist. Harwell stated that Medina told him it was possible that he and the other man shot each other while "tussling" over the gun.

¶22 The State called Harwell's girlfriend, whose testimony was similar to Harwell's. She stated that on the night in question, Medina and Harwell were at her house, Medina wanted Harwell to take him to get a gun, she and Harwell did not want them to go. The girlfriend understood that Medina was going to get a new gun—one that did not already belong to him. When Medina and Harwell returned to her house, Medina had been shot and was bleeding profusely.

¶23 Sanfilippo testified that he agreed to join Swanagan in robbing Medina during the gun sale. Sanfilippo observed Swanagan enter the backseat of Harwell's vehicle, with Swanagan holding the Glock flat in his hand. Upon Swanagan's text signaling him to proceed, Sanfilippo approached the driver's side

9

door and pointed a gun at Harwell. Sanfilippo hit Harwell in the face with the gun. Sanfilippo stated that Harwell opened the driver's side door, pushing him out of the way. Sanfilippo then ran away after Harwell exited the vehicle and he heard several gunshots.

¶24 An MPD dive team officer testified he retrieved two weapons from the Milwaukee River in the area Harwell informed the police the weapons were thrown. A Wisconsin State Crime Laboratory analyst testified about the weapons retrieved: a Hi-Point .380 caliber and a Glock 9mm; three case cartridges found on the ground that matched the .380 pistol Harwell fired in the air; and a fired 9mm bullet retrieved from Swanagan's body. The analyst explained that the fired bullet found inside Swanagan came from a Glock, based on its class and rifling characteristics, but the analyst could not definitively determine the bullet came from the Glock Swanagan brought. A WAPD detective also testified, in response to dispute over whether the Glock had a magazine when Swanagan entered the vehicle, that a single bullet could have been fired from the Glock even if it did not have a magazine in it. The detective also discussed that a single bullet could have hit both Medina and Swanagan and that eyewitnesses often misremember the number of gunshots heard in a shooting. The detective also noted that no bullets were recovered from inside the vehicle and no bullet holes were found.

¶25 Medina testified in his own defense, stating that he had been partying at Harwell's girlfriend's home. He was using Facebook Messenger to text with Swanagan, a friend he met through Sanfilippo, about his interest in purchasing a firearm for protection. He agreed to pay Swanagan $350 for the Glock pistol. He stated that he never told Harwell he was going to rob anyone for the gun.

¶26     Medina testified that he did not know that Harwell was carrying a gun, he himself was not carrying a gun, and he had the cash ready for the purchase. He stated that Swanagan entered the backseat of the vehicle, right behind him, carrying the Glock flat in the palm of his hand. Medina stated that he saw Sanfilippo approach the driver's door with a gun, demanding property. Swanagan then stuck the Glock in his face and Medina grabbed at the gun. Medina heard Harwell exit the vehicle and fire a few shots in the street. Medina then realized he had been shot. Medina told Harwell they had to get out of there; they got back in the vehicle and drove away.

¶27     With this testimony and evidence in mind, there was ample evidence for a jury to have a reasonable basis to find that Medina was behaving recklessly when he approached Swanagan and grabbed the Glock from the palm of his hand. Thus, there was ample evidence to support the jury's finding of second-degree reckless homicide.

¶28     When we turn to Medina's testimony in his defense, he disavowed that he was planning to steal the gun from Swanagan.[9]    However, Medina's testimony is not specific about the steps he took to protect himself. He testified that he saw Sanfilippo approach Harwell at the driver's seat with a gun and a statement to "Give me all your shit." He testified that Swanagan then pointed the Glock at him. Medina further testified that he never had the Glock in his hand, he never snatched the gun from Swanagan, and he only grabbed at it when it was

---

[9] We note that the jury did not find felony murder arising from an armed robbery had occurred, but instead found second-degree reckless homicide. Therefore, whether Medina's claim that he had $350 in cash was accurate is not a relevant factual dispute in this appeal.

pointed at him. During cross-examination, Medina had no explanation for how Swanagan got shot in the heart.[10]

¶29 Having heard Medina's testimony, the jury had no obligation to accept that he acted in self-defense.[11] Medina's testimony did not establish that his actions were reasonable, intentional, or necessary. *See State v. Ruffin*, 2022 WI 34, ¶45, 401 Wis. 2d 619, 974 N.W.2d 432. He did not state that he "intentionally use[d] force" against Swanagan "for the purpose of preventing or terminating what [he] reasonably believe[d] to be an unlawful interference with his … person[.]" WIS. STAT. § 939.48(1). Medina's testimony supported that he was grappling over a gun, but he did not claim that he controlled the gun with any intent to protect himself. The jury heard from Harwell that Medina was there to rob Swanagan, which showed provocation in his actions and not self-protection.

¶30 The record provides a reasonable basis for the jury to find that Medina's version of events were not credible and to then find that the State proved

---

[10] Medina argues in his reply brief, for the first time, that the State did not disprove an accident affirmative defense. "The accident defense prevails in a homicide case only in situations in which 'a person unfortunately kills another in doing a lawful act *without any intent to kill* and without criminal negligence.'" *State v. Watkins*, 2002 WI 101, ¶43, 255 Wis. 2d 265, 647 N.W.2d 244 (quoting *State v. Bond*, 41 Wis. 2d 219, 228, 163 N.W.2d 601 (1969) (discussing homicide by misadventure)). While it is possible for accident and self-defense to be offered concurrently, Medina did not argue accident at trial and did not request an accident defense jury instruction. We need not address an argument made for the first time in a reply brief. *See State v. Ortiz-Mondragon*, 2014 WI App 114, ¶10 n.4, 358 Wis. 2d 423, 856 N.W.2d 339, *aff'd*, 2015 WI 73, 364 Wis. 2d 1, 866 N.W.2d 717.

[11] Although the State argues that Medina's testimony was insufficient for even giving the self-defense instruction to the jury, we agree with the circuit court that he overcame the low bar to raise the defense. *See State v. Stietz*, 2017 WI 58, ¶16, 375 Wis. 2d 572, 895 N.W.2d 796.

beyond a reasonable doubt that Medina did not act in self-defense.[12] "If more than one inference can be drawn from the evidence, we must adopt the inference that supports the conviction." *State v. Long*, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. The evidence disproving self-defense was not "so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt [and thus, not finding self-defense] beyond a reasonable doubt." *Poellinger*, 153 Wis. 2d at 501. Therefore, we sustain the jury's verdict and conclude there was sufficient evidence to support the conviction and disprove the affirmative defense of self-defense.

## II. *Sentence modification*

¶31 Medina argues that the sentence imposed was unduly harsh and severe, especially in light of the sentences imposed on his two co-actors. Medina asserts that the circuit court failed to take into account the required factor of the rehabilitative needs of the defendant. Medina argues that the sentence was not only an erroneous exercise of discretion, but also cruel and unusual punishment in violation of the Eighth Amendment.

¶32 It is well established that sentencing is within the circuit court's discretion. *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. "A [circuit] court misuses its discretion when it fails to state the relevant and material factors that influenced its decision, relies on immaterial factors, or gives

---

[12] Further, by rejecting Medina's claim of self-defense, the jury also had a reasonable basis to reject Medina's claim that he was privileged to possess a firearm, despite the legal prohibition, due to coercion by Swanagan's actions. *See* *State v. Coleman*, 206 Wis. 2d 199, 210-11, 556 N.W.2d 701 (1996) (providing a narrow defense of privilege to a felon in possession of a firearm charge).

too much weight to one factor in the face of other contravening factors." *State v. Steele*, 2001 WI App 160, ¶10, 246 Wis. 2d 744, 632 N.W.2d 112. However, "[w]hen the exercise of discretion has been demonstrated, we follow a consistent and strong policy against interference with the discretion of the [circuit] court in passing sentence[.]" *State v. Stenzel*, 2004 WI App 181, ¶7, 276 Wis. 2d 224, 688 N.W.2d 20.

¶33    We begin with the record. At the sentencing hearing, the circuit court discussed sentencing factors and considered that every defendant is situated differently. The court took into account the required factors in sentencing; it considered Medina to not have "prosocial" conduct and the he was "hanging around, using drugs, playing video games, playing with guns." The court stated that based on Medina's demeanor on the witness stand and his presentation that day, that he was "still minimizing" his role in the shooting. The court noted that Medina's behavior affected an entire community as well as the families involved. The court considered the need to protect the community, and discussed the effects of gunfire in a residential neighborhood and a "poor soul" left alone to die. The court did not make Medina eligible for any of the early release programming; although, it did recommend he undergo an alcohol and drug evaluation and to participate in prison programming.

¶34    The circuit court has inherent authority to modify a previously imposed sentence on the ground that the "original sentence was 'unduly harsh or unconscionable[.]'" *State v. Grindemann*, 2002 WI App 106, ¶21, 255 Wis. 2d 632, 648 N.W.2d 507 (citation omitted). "A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable." *State v. Scaccio*, 2000 WI App 265, ¶18, 240 Wis. 2d 95, 622 N.W.2d 449. Medina's total penalty exposure under the charges was twenty-five years of initial confinement

and fifteen years of extended supervision. *See* WIS. STAT. §§ 939.50(3)(d), (g), 939.63(1)(b), 940.06(1), 941.29(1m)(bm); 973.01(2). His sentence of fourteen years of initial confinement and ten years of extended supervision amounts to just over half the maximum sentence he could have received. It was well within the statutory maximum. We do not consider the sentence alone to be unduly harsh.

¶35 Further, Medina argues that his sentence is unfair in light of his co-actors' sentences. The record reflects that Sanfilippo, who had no prior record, received six years of initial confinement and nine months of extended supervision after pleading guilty to felony murder. Harwell, who was sentenced after Medina was convicted, but before he was sentenced, received five years of initial confinement and five years of extended supervision, consecutive to a four-year revocation sentence he was already serving.

¶36 No two defendants present the same facts and considerations before a sentencing court. *Gallion*, 270 Wis. 2d 535, ¶48. Participating in the same crime does not require the same sentence. *Jung v. State*, 32 Wis. 2d 541, 548, 145 N.W.2d 684 (1966). "Individualized sentencing" based on relevant facts and factors, sentencing objectives, and statutory guidelines is a "cornerstone to Wisconsin's criminal justice jurisprudence." *Gallion*, 270 Wis. 2d 535, ¶¶46, 48. Therefore, intrinsically, it is not harsh or unconscionable that Medina's sentence was longer than his co-actors' sentences.[13]

---

[13] Although Medina argues that the court's characterization that he refused to accept responsibility, especially when considered in comparison to Harwell and Sanfilippo, was an improper consideration, we reject this argument. "A [circuit] court does not erroneously exercise its discretion when it considers a defendant's refusal to admit guilt as one of a number of factors at sentencing, so long as the court does not give one factor undue weight." *State v. Carrizales*, 191 Wis. 2d 85, 96, 528 N.W.2d 29 (Ct. App. 1995). The record does not reflect that the circuit court gave undue weight to Medina's failure to accept responsibility.

¶37 Next, Medina argues that the circuit court failed to take into account his rehabilitative needs under the required sentencing objectives. *See State v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76 ("The principal objectives of a sentence include, but are not limited to, the protection of the community, the punishment of the defendant, rehabilitation of the defendant, and deterrence to others."). The record reflects that the circuit court recommended that Medina undergo a drug and alcohol abuse evaluation and that he take advantage of the educational and vocational programming in prison. The circuit court's sentencing remarks included a concern that Medina faced a "continuing threat … of aimlessness and drug use that … permeated the trial."

¶38 Although the circuit court is required to state on the record "the reasons for its sentencing decision," WIS. STAT. § 973.017(10m), it remains within the discretion of the circuit court to elucidate which factors and to assign the appropriate weight to those factors that the court concluded were relevant to the imposition of the sentence. *Stenzel*, 276 Wis. 2d 224, ¶16. The circuit court is not required to "enumerate all of the factors that might have been considered in reaching the decision." *State v. Grady*, 2007 WI 81, ¶41, 302 Wis. 2d 80, 734 N.W.2d 364. Therefore, we conclude that the circuit court adequately considered Medina's rehabilitative needs in its exercise of sentencing discretion.

¶39 Finally, Medina argues that the sentence imposed was not only an erroneous exercise of discretion, but also cruel and unusual punishment in violation of the Eighth Amendment.[14] A sentencing court erroneously exercises

---

[14] Like the Eighth Amendment, the Wisconsin Constitution also bars "cruel and unusual punishments." WIS. CONST. art. I, § 6. "The standard for determining whether a punishment is cruel and unusual in a particular case is the same under both federal and Wisconsin law." *State v. Ninham*, 2011 WI 33, ¶85, 333 Wis. 2d 335, 797 N.W.2d 451.

its discretion "where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). "'Punishment is not "cruel and unusual," unless it is so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice.'" *State v. Pratt*, 36 Wis. 2d 312, 322, 153 N.W.2d 18 (1967) (citation omitted). Here, Medina's sentence was slightly over half the statutory maximum. We do not consider the sentence to shock the conscience or shock our sense of justice. We do not discern an erroneous exercise of sentencing discretion.

## CONCLUSION

¶40     For the reasons stated above, we conclude that the State presented sufficient evidence for the jury to have rejected Medina's self-defense claim beyond a reasonable doubt. We do not discern an erroneous exercise of discretion in the court's sentencing. Therefore, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.